# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

JEROME MORGAN,                          *        CIVIL ACTION NO.
                                        *
     *Plaintiff*            *        17-5319
                                        *
VERSUS                                  *
                                        *
HARRY F. CONNICK, in his official       *        SECTION      SECT. H  MAG. 5
capacity as District Attorney and in his *
individual capacity, SHARON             *
ANDREWS, in her official capacity as    *
Assistant District Attorney, KAREN      *
GODAIL, in her official capacity as     *        JURY TRIAL DEMANDED
Assistant District Attorney, CRAIG      *
FAMULARO, LEON CANNIZZARO, in           *
his individual and official capacity as *
District Attorney, ORLEANS PARISH       *
DISTRICT ATTORNEY'S OFFICE,             *
THE NEW ORLEANS POLICE                  *
DEPARTMENT, DETECTIVE WAYNE             *
TAMBORELLA, JANE AND JOHN               *
DOES 1-25, ABC INSURANCE                *
COMPANIES 1-10                          *
                                        *
     *Defendants*           *
                                        *
* * * * * * * * * * * * * * * * * * * *  *

## COMPLAINT

For my Complaint against Defendant Harry F. Connick in his individual and official capacities, Defendant Leon A. Cannizzaro, Jr. in his individual and official capacity, Defendant ADA Sharon Andrews in her official capacity, Defendant ADA Karen Godail in her official capacity, Defendant ADA Craig Famularo in his official capacity, Defendant Orleans Parish District Attorney's Office ("OPDA"), Defendant New Orleans Police Department ("NOPD"), Defendant Wayne Tamborella, Defendants Jane and John Does 1-25, and Defendants ABC Insurance Companies 1-10 (hereafter at times "Defendants"), I, Jerome Morgan, aver as follows:

1

## INTRODUCTION

1.        This civil action seeks money damages for the extraordinary injuries and losses

suffered by myself, Plaintiff Jerome Morgan ("Morgan" or "Plaintiff"), for being wrongfully

convicted of 2nd degree murder and sentenced to 20 years of incarceration before being

exonerated.  At various times since 1993, above named Defendants, as a matter of official policy

and  practice,  wrongfully  concealed  exculpatory  evidence,  deprived  Mr.  Morgan  of  his

constitutional  right  to  testify  in  his  own  behalf  with  the  benefit  of  all  pertinent  evidence,  and

maliciously prosecuted Mr. Morgan in violation of his rights under the Constitution of the United

States and the constitutional and statutory authorities of the law of the State of Louisiana.  This

was a deprivation of my rights, under color of state law, by the Defendants and other authorities as

defined by the United States 5th Circuit Court of Appeal in *Holly Ray Burns v. Sheriff Jack Strain, et

al.* [5th Cir. No. 05-30837], *and Burge v. NOPD*, 187 F.3d 452, *citing Mairena*, 816 F.2d at 1064

and *Hudson*, 174 F.3d 677-in violation of his rights, privileges, and immunities under the United

States Constitution and the 1974 Louisiana Constitution.

### THE PARTIES

2.        I, Plaintiff Jerome Morgan, am an adult resident of the Eastern District of

Louisiana.

3.        Defendant Harry F. Connick was, at all times prior to January 2003 pertinent to

this Complaint, the District Attorney for Orleans Parish, which is located within the Eastern

District of Louisiana.  Defendant Connick is being sued in his individual capacity as well as

his official capacity because at times relevant to this Complaint, he was a final policymaker

responsible for his own actions and the actions of his subordinate employees of the Orleans

Parish District Attorney's Office, and was acting in an administrative capacity with respect to

2

certain matters alleged herein.

4.      Defendant Sharon Andrews was, at times pertinent to this Complaint, an Assistant District Attorney for Orleans Parish, which is located within the Eastern District of Louisiana.

5.      Defendant Karen Godail was, at times pertinent to this Complaint, an Assistant District Attorney for Orleans Parish, which is located within the Eastern District of Louisiana.

6.      Defendant Craig Famularo was, at times pertinent to this Complaint, an Assistant District Attorney for Orleans Parish, which is located within the Eastern District of Louisiana.

7.      Defendant New Orleans Police Department, and its Superintendent, which at all times pertinent hereto implemented and/or allowed unlawful policies and procedures, failed to adequately train, or failed to organize and control its officers such that it allowed violations of the rights alleged herein.

8.      Detective Wayne Tamborella, in both his individual and official capacity, who at all times pertinent was the lead investigator for the NOPD in its violation of Plaintiff's rights as alleged herein, including his First Amendment rights.

9.      Defendant Leon Cannizzaro is the current District Attorney for Orleans Parish, which is located within the Eastern District of Louisiana.  Defendant Cannizzaro is being sued in his individual capacity for the continued prosecution of Plaintiff since his exoneration and official capacity as the successor in office and liability to District Attorney Connick for the damages caused by the official policy and/or practices of the Orleans Parish District Attorney's Office while Connick was the District Attorney.

10.     Defendant Orleans Parish District Attorney's Office is a local government entity of Orleans Parish, Louisiana, and is located within the Eastern District of Louisiana.

11.    At all times relevant to this Complaint, Defendants acted under color of state law.

12.    Defendants John and Jane Does 1-25 are yet unknown individuals who, upon information and belief, participated in or are responsible for the actions that are subject to this lawsuit.  To the extent any of them can be said to be policymaking authorities whose actions represent the official policy of the governmental entities they represent, they are sued in their official capacities.

10.    Defendant ABC Insurance Companies 1-10 are yet unknown insurance companies who, upon information and belief, have issued and currently have in effect one or more policies of insurance covering one or more the of the Defendants named herein.

## JURISDICTION AND VENUE

11.    This action arises under the laws of the United States, and jurisdiction is conferred on this Court pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  Supplemental jurisdiction of the Court over the claims arising under state law is invoked pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

12.    Venue in the Eastern District of Louisiana is proper pursuant to 28 U.S.C. § 1391(b), because it is the district in which many defendants reside, and because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Louisiana.

## FACTUAL ALLEGATIONS

### *The Murder of Clarence Landry.*

13.    On May 22, 1993, seventeen-year-old Jerome Morgan, Plaintiff, attended a

4

sweet sixteen birthday party held in a ballroom at the Howard Johnson hotel on Old Gentilly

Boulevard in New Orleans. *State v. Morgan,* No. 94-2568 (La. App. 4 Cir. 3/14/96), 671 So.

2d 998, 1000.

14.     A fight broke out between two groups of boys at the party which did not

involve Plaintiff. *Id.* Shots were fired and three teens were hit, two survived, but 16-year-old

Clarence Landry was senselessly murdered and died on scene. *Id.*

15.     Clarence Landry was with a group of fellow high school students, Kevin Johnson,

Antonio Bradley, and Harrison Hogan, at the party. The four friends were dancing and had

attracted a crowd of onlookers.  Their friend, Hakim Shabazz, was also there.

16.     Another group of young men began challenging Clarence Landry and his friends,

so Mr. Landry and friends decided to leave to avoid a potential altercation.

17.     Clarence Landry then realized that he had left his younger cousin at the party and

attempted to go back and find her.

18.     Mr. Landry and Kevin Johnson tried to go back in, but a fight started with the

young men that had challenged them earlier.

19.     Hakim Shabazz attempted to break up the fight and a shot was fired, hitting Rogers

Mitchell, the boy fighting with Mr. Landry's friend Harrison Hogan, in the leg.

20.     Clarence Landry was shot five times and pronounced dead at the scene.

21.     Hakim Shabazz was shot in the abdomen, but survived.

22.     Jerome Morgan, a 17-year-old high school student also at the party, was not

involved in the fight. *Morgan,* 671 So. 2d at 1000.

23.     The actual gunman fled the ballroom immediately after the shooting and ran

down the street to an alley where he jumped over a fence. *Id.* at 1001.

24.     Kevin Johnson testified at trial that he chased the perpetrator across the street to "the other side of the car wash . . . leading to a dark alley" where the gunman jumped over a fence and escaped.

### *Investigation of Clarence Landry's Murder*

25.     The jury was presented with evidence that it took NOPD thirty to forty-five minutes to respond to this murder scene. *Morgan,* 671 So.2d at 1004.

26.     However, a 911 communication history that showed that the shooting occurred at 11:30 p.m. and police were on the scene just six minutes later.

27.     When the police arrived, they sealed the room, and no one was allowed in or out.

28.     When the detectives arrived they took down the names of each of the teens that were still sealed in the room. *Id.* at 1000.

29.     Plaintiff was in the room and his name was listed by the detectives in their report along with his date of birth, address, and social security number. *Id.*

30.     While the detectives were obtaining this information, other NOPD officers were searching for the gunman who had fled the scene.

31.     The 911 evidence proving that police sealed the room within six minutes of the shooting, with Plaintiff inside making it impossible for him to be the shooter who fled, was in the possession of the NOPD and NODA but never turned over to the Defense.

32.     Four other witnesses also testified that Plaintiff was in the room, not the shooter, and even aided a wounded individual.

33.     The NOPD had no initial suspects in this case and began working off of, for the most part, high school rumors.

34.     The NOPD investigation, led by Detective Wayne Tamborella, obtained its evidence against Plaintiff by suggesting to several witnesses that Plaintiff was the shooter.

35.     Hakim Shabazz, one of the shooter's victims and arguably the NODA office's most important witness, had started hearing rumors that Plaintiff was the shooter in the months that followed.

36.     Mr. Shabazz finally answered one of numerous calls from the NOPD and unequivocally stated he had no idea who the gunman was.

37.     At that point, the NOPD detective told Mr. Shabazz that "Jerome shot you. Jerome Morgan shot you."

38.     Based on the misrepresentations of the NOPD, and the rumors the NOPD perpetuated as to Plaintiff's involvement, Mr. Shabazz agreed to sign the NOPD's written statement and testify against the Plaintiff for shooting him.

39.     Mr. Shabazz explained during an evidentiary hearing, on October 10, 2013, that he identified Plaintiff, despite the fact that he did not know who shot him, because he had heard rumors that Mr. Morgan was the gunman and that he was "getting that from the police;" it was almost like the police "painted this picture...."

40.     Additional witnesses from 1994, and at the October 10, 2013 evidentiary hearing, corroborate Mr. Shabazz's testimony regarding coercion by the NOPD.

41.     Another witness, Mr. Kevin Johnson, was also coerced by the NOPD detectives in implicating Plaintiff.

7

42.     Kevin Johnson was the only person who saw the gunman after the shooting.

43.     On June 3, 1993, eleven days after the crime, Kevin Johnson was shown a photographic array containing Jerome Morgan and was asked if he recognized any of the people in the photos.

44.     The NOPD detective noted in a report that Kevin Johnson put aside the photo of Mr. Morgan and plainly said he "was not the shooter."

45.     Kevin Johnson was sure of this because he was vaguely familiar with Plaintiff, and knew his face, and knew he was not the shooter.

46.     In January 1994, seven months after Mr. Johnson's elimination of Jerome Morgan as the gunman, he was brought back to the police station by Ms. Landry (deceased victim's mother) who had heard that the boy she had heard rumored to have killed her son was released from jail.

47.     Mr. Johnson explained that following the shooting he had also heard rumors that someone called "Jerome Morgan" was the gunman.

48.     When Kevin Johnson visited the NOPD detectives in January of 1994 he was shown a different photo array, but that also contained Plaintiff's photo as the only repeat photo from a previous array with Plaintiff in a high school yearbook.

49.     Mr. Johnson again put aside Plaintiff's photo as not the shooter.

50.     Then the NOPD detective then asked Mr. Johnson "Who did you say killed your friend?" Referring Mr. Johnson to rumors that had been spread by the NOPD.

51.     Mr. Johnson replied that he heard Jerome Morgan, Plaintiff.

52.     The NOPD detective responded, "'Are you sure this is not the guy?' and again Mr.

8

Johnson said "no."

53.     The NOPD detective then put the picture back and said, "You sure this is not the guy? This is Jerome Morgan."

54.     Kevin Johnson then agreed with the NOPD detective.

55.     The trial court weighed the evidence of the post-conviction hearing of these two coerced witnesses, Mr. Shabazz and Mr. Johnson, against the unconvincing testimony of NOPD Detective Tamborella, and found for that the witness testimony was tainted by Detective Tamborella and likely others in the NOPD.

56.     Current New Orleans District Attorney Leon Cannizzaro was the sitting judge at Plaintiff's initial 1994 conviction for second degree murder.

57.     DA Cannizzaro, and the NODA's office, charged the two witnesses who finally broke their silence of the prosecution's unconstitutional tactics with perjury.

58.     The District Attorney and the NODA also kept in pursuit of Plaintiff in the hopes of bringing on a new trial and a conviction, despite the overwhelming evidence proving Plaintiff's innocence.

59.     These egregious actions by the District Attorney, and his office, have piled on the twenty plus years of agony suffered by Plaintiff at the hands of a corrupt system, prosecution, and police department.

60.     The withholding of vital evidence, coercion of witnesses, and continued deprivation of Plaintiff's rights was a conspiracy depriving him of the most basic right of any human being.

*Relevant Procedural History*

61.     Jerome Morgan was arrested on October 7, 1993. He remained in jail for 70 days until he was released due to lack of indictment.

62.     Mr. Morgan was arrested again on April 21, 1994 after witnesses were coerced.

63.     Mr. Morgan was found guilty of second degree murder on September 7, 1994, and sentenced to life without parole.

64.     Mr. Morgan's conviction and sentence were affirmed on appeal on September 27, 1996. *State v. Morgan,* 671 So. 2d 998 (La. Ct. App. 1996), *cert. denied,* 679 So.2d 1359 (La. 1996).

65.     In 2003, Mr. Morgan filed a *pro se* application for post-conviction relief in the trial court. On July 15, 2011, undersigned counsel amended and supplemented that application.

66.     After a two-day evidentiary hearing, the state's procedural objections were denied on February 2, 2012, and that decision was upheld by the Court of Appeal for the Fourth Circuit and the Louisiana Supreme Court. *State v. Morgan,* No. 12-1751 (La. 4/19/13), 111 So. 3d 1028.

67.     On October 10 and 16, 2013, a hearing on the merits of Mr. Morgan's application for post-conviction relief was held where Jeffrey Jackson, Rommel Johnson, Chevis Ebanks, Kevin Johnson, and Hakim Shabazz testified on Mr. Morgan's behalf.  NOPD Detective Wayne Tamborella testified on behalf of the state.

68.     On January 17, 2014, the trial court granted Mr. Morgan's application for post-conviction relief.

69.     On February 3, 2014, a hearing to set bail was held. Bail was set at $25,000 with additional conditions.

70.     On February 4, 2014, Jerome Morgan was released from Orleans Parish Prison.

71.     On May 23, 2014, the Conrt of Appeal, Fourth Circuit 1manimously upheld the trial court's decision.

72.     On January 8, 2015, the New Orleans District Attorney's Office, and DA Leon Cannizzaro, charged Hakim Shabazz and Kevin Johnson with perjury by inconsistent statements, La. R.S. 14:124.

73.     On March 27, 2015, the Louisiana Supreme Conrt denied the state's writ application with no dissent. State v. Morgan, No. 14-1297 (La. 3/27/15), 162 So. 3d 379.

74.     On April 9, 2015, the conditions of Mr. Morgan's bail were amended from 24/7 home incarceration to 8pm to 8am curfew.

75.     On May 27, 2016, the state finally dismissed the charges against Plaintiff.

76.     Pressure to blame someone for the death of Mr. Landry led to the prosecution of Plaintiff without careful regard for Plaintiff's innocence, and without regard for the constitutional protections guaranteeing Plaintiff s right to testify in his own behalf with evidence that was favorable to him.

77.     Upon information and belief, in furtherance of the goal to prosecute and convict Plaintiff, Defendants orchestrated a scheme amongst themselves and with others to convict Plaintiff.

### *A History of Prosecutorial Misconduct Under Connick*
### *(See Thompson v. Connick 2:03-cv-02045 Rec. Doc. 1)*

78.     Under Connick, the OPDA was plagued with prosecutorial misconduct involving the failure to reveal exculpatory evidence to the defense. For example, it was reported that after

being convicted and imprisoned in 1975, Gregory Bright and Earl Truvia were released from prison after their convictions were thrown out on account of the failure of prosecutors from the Orleans Parish District Attorney's Office to turn over exculpatory evidence. See *No Retrial for Two Freed from Prison in 1975 Case,* THE BATON ROUGE ADVOCATE, at 2003 WL 4877582 (June 25, 2003). Published findings of Brady violations have been numerous under Connick's leadership. See, Kyles v. Whitley, 514 U.S. 419, 453-44 (1995); Cousin v. Small, 325 F.3d 627, 630 (5th Cir. 2003) (noting that the lower court found that the prosecutor in Connick's office had withheld obviously exculpatory material in obtaining the conviction and death sentence of the sixteen-year old defendant); State v. Knapper, 579 So.2d 956, 961 (La. 1991); State v. Rosiere, 488 So. 2d 965, 971 (La. 1986); State v. Perkins, 423 So.2d 1103, 1108 (La.1982); State v. Curtis, 384 So.2d 396, 398 (La. 1980); State v. Falkins, 356 So.2d 415, 419 (La.1978); State v. Carney, 334 So.2d 415, 419 (La. 1976); State v. Lee, 844 So.2d 970, 974 (La. App. 4 Cir. 2003) (noting and not disturbing the trial court's finding that the State had concealed Brady material); State v. Oliver, 682 So.2d 301, 311-312 (La. App. 4 Cir. 1996); State v. Smith, 591 So.2d 1219 (La. App. 4 Cir. 1991). Cf. Inre Lionel "Lon" Burns (State v. George Lee, III), 800 So.2d 833, 844 (La. 2001) (affirming the conviction of Burns, a prosecutor in Connick's office, for constructive contempt for failing to disclose the discovery of evidence (not exculpatory), which failure caused a mistrial in an important criminal prosecution).

79.    Connick's office was beset by accusations and findings of prosecutorial misconduct, which included the OPDA's practice of concealing exculpatory evidence from the accused. See Gwen Filosa, *Harry Bids Adieu,* THE NEW ORLEANS TIMES-PICAYUNE,

at 2002 WL 3090621 (March 28, 2002) (reporting that Denise LeBoeuf characterized

Connick's office as being "nationally known for misconduct"); Doug Simpson, *Crooning*

*DA Criticizedfor Injustice in the Name of Justice,* THE BATON ROUGE SUNDAY

ADVOCATE, at 2001 WL 3862148 (June 10, 2001) (quoting a former prosecutor as stating,

"Harry's problem is, he presses his people to obtain convictions without instructing them

that they have to play with a fair hand" and noting that Connick recently had to defend

three of his prosecutors on charges of misconduct); *Revelations in Case of Homicide Land*

*Connick in Hot Seat,* THE BATON ROUGE ADVOCATE, at 1999 WL 6107718 (June 2, 1999)

(stating that "[t]he latest revelation of apparent misconduct has stirred long-standing

allegations that District Attorney Harry Connick's assistants have frequently skirted the

constitutional provision which requires them to turn over any evidence that could be

favorable to the accused").

80.    Defendant Connick has been vocal in the support of subordinates who have

committed prosecutorial misconduct, and has discounted the seriousness of such unlawful

conduct by dismissing findings of misconduct or laying blame elsewhere. See Gwen Filosa,

*Jail Timefor N O. Prosecutor Voided; Justices Don't Find Evidence Tampering,* THE NEW

ORLEANS TIMES-PICAYUNE, at 2001 WL 26217005 (Nov. 29, 2001) (after the Louisiana

Supreme Court voided a finding that Assistant District Attorney Lionel Lon Burns planted

evidence, Connick "stood by Burns" and portrayed the Supreme Court's ruling as "vindication,"

and a crowd of assistant district attorneys gave Burns a round of applause, despite the fact that

the Supreme Court upheld the determination that Burns had wrongfully withheld his knowledge

of evidence from the defense); Alan Syre, *High Court Overturns Prison Termfor Prosecutor,*

THE BATON ROUGE ADVOCATE, at 2001 WL 3877101 (Nov. 30, 2001) {while Connick acknowledged that Assistant District Attorney Lionel Lon Burns did not share evidence with defense attorneys, Connick blamed the New Orleans police for not finding the evidence themselves and said that the trial judge was biased against Burns); Doug Simpson, *Crooning DA Criticized for Injustice in the Name of Justice,* THE BATON ROUGE SUNDAY ADVOCATE, at 2001 WL 3862148 {June 10, 2001) (in defending three prosecutors, the first of whom was sentenced to jail for evidence tampering and the failure to turn over exculpatory evidence, the second of whom was charged by the Louisiana Attorney Disciplinary Board for allegedly withholding exculpatory evidence, and the third of whom was allegedly recorded instructing a witness to lie on the stand, Connick denied all the charges and stated that the blame lay elsewhere).

81.     Public media reports also reveal criticisms about how investigators were managed under the direction of former District Attorney Connick.  See Michael Perlstein, *Jordan Unveils New Team, Goals: Investigators to Work Crime Scenes, Funerals,* THE NEW ORLEANS TIMES-PICAYUNE, at 2003 WL 3990172 (June 30, 2003).  It was reported that the new district attorney was surprised that Connick did not establish a mission statement or specific job objectives for the investigative unit. *Id.*

82.     The pattern of constitutional violations for failing to turn over exculpatory evidence to defendants and for maliciously prosecuting individuals without regard to guilt or innocence was known by Connick, or should have been known by him, such that there was an obvious need to take some action to control, supervise, discipline, train, investigate, or intervene so that these constitutional violations would cease to occur.  The failure of Connick to take

14

appropriate action to control, supervise, discipline, train, investigate, or intervene with respect to the prosecutors amounted to a deliberate indifference to the unconstitutional practices of these prosecutors, in failing to turn over exculpatory evidence, and maliciously prosecuting individuals without due regard for guilt or innocence. Indeed, the constitutional violations in this case were the direct result of Defendants' general policy of securing convictions through overly aggressive tactics and a specific policy in this case of doing whatever was necessary to secure a murder conviction motivated by the prominence of the victim.

83. The unwritten practice of Connick and the OPDA led to the deprivation of Plaintiff s constitutional rights by the concealment of crucial evidence in the criminal proceedings against him.

COUNT I

*Claim for Malicious Prosecution Against Defendants Under Louisiana State Law*

84. All of the foregoing are incorporated by reference and realleged as though fully set forth herein.

85. Defendants charged Plaintiff with the murder of Clarence Landry.

86. Despite having within its possession exculpatory evidence that proved Plaintiff's innocence of the crimes or cast serious doubt as to Plaintiff being the perpetrator of the crimes, Defendants caused the prosecution of Plaintiff for murder.

87. Had the concealed exculpatory evidence been considered and evaluated, there would have been no probable cause to proceed against Plaintiff on the charges.

88. Plaintiff eventually was vindicated of the murder. Plaintiff was exonerated on the murder charge.

89.     In prosecuting Plaintiff for the murder, Defendants Connick, Andrews, Godail, and the OPDA acted against Plaintiff with malice.

90.     The actions of Defendants constitute malicious prosecution of Plaintiff in violation of the laws of the State of Louisiana.

91.     As a successor in office and liability to District Attorney Connick, current Orleans Parish District Attorney, Leon Cannizzaro, is liable in his official capacity for the damages caused by the malicious prosecution of Plaintiff by Connick and the OPDA.

COUNT II

*Claim for Intentional and/or Reckless Infliction of Emotional Distress Against Defendants*

92.     All of the foregoing are incorporated by reference and realleged as though fully set forth herein.

93.     Defendants did intentionally, maliciously, and with reckless disregard and deliberate indifference to Plaintiff s rights, engage in extreme and outrageous conduct in connection with the prosecution of Plaintiff, including but not limited to, engaging in deficient investigations and prosecutions of Plaintiff; proceeding with the prosecutions of Plaintiff without probable cause; illegally destroying and concealing exculpatory evidence; and presenting false and misleading argument and evidence to courts and to juries.

94.     The unlawful activities of Defendants were performed for the purpose of ensuring that Plaintiff was arrested, indicted, convicted, and imprisoned, so that Defendants could secure a victory.

95.     Defendant Connick did intentionally, maliciously, and with reckless disregard and deliberate indifference to Plaintiff s rights, engage in extreme and outrageous conduct in

connection with the prosecution of Plaintiff, including but not limited to, convening a grand jury for improper purposes, which included the deprivation of Plaintiff s rights by shielding him from information regarding the concealment of the blood evidence and the conspiracy to convict him of the armed car-jacking and the murder without due regard to his innocence.

96.     Defendants desired to inflict severe emotional distress on Plaintiff and/or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

97.     As a direct and proximate result of Defendants' extreme and outrageous behavior, Plaintiff suffered severe and emotional distress for which he is entitled to damages.

98.     As a successor in office and liability to District Attorney Connick, current Orleans Parish District Attorney, Leon Cannizzaro, is liable in his official capacity for the damages caused by the intentional and/or reckless infliction of emotional distress by Defendants Connick, Andrews, Godail, and the OPDA.

## COUNT III

*Claim Under 42 U.S.C. § 1983 Against Defendants*

99.     All of the foregoing are incorporated by reference and realleged as though fully set forth herein.

100.     Defendants charged or indicted Plaintiff with the murder of Clarence Landry.

101.     Despite having within their possession exculpatory evidence that proved Plaintiff's innocence of the crimes or cast serious doubt as to Plaintiff being the perpetrator of the crimes, Defendants caused the prosecution of Plaintiff for murder.

102.     Had the concealed exculpatory evidence been considered and evaluated, there

would have been no probable cause to proceed against Plaintiff on the charges.

103.   Plaintiff eventually was vindicated of the murder.  Plaintiff was exonerated on the murder charge.

104.   In prosecuting Plaintiff for the murder, Defendants acted against Plaintiff with malice.

105.   The actions of Defendants constitute malicious prosecution in violation of Plaintiff's rights under the United States Constitution and 42 U.S.C. § 1983.

106.   Defendants failed to disclose crucial exculpatory evidence to Plaintiff prior to or during the armed robbery trial and/or the first murder trial. The concealed exculpatory evidence was material, and the failure to turn over the evidence gave rise to constitutional violations of Plaintiff s rights under *Brady*.

107.   Through his direct actions and decisions as the final and official policymaker for the Orleans Parish District Attorney's Office, Defendant Connick intentionally, maliciously, and with reckless disregard for and deliberate indifference to Plaintiff's rights, either participated in the withholding of the exculpatory evidence and/or created and maintained an official policy, practice, and/or custom of ordering and compelling assistant district attorneys of his office to proceed with and maintain the investigation and prosecution of Plaintiff without concern for his constitutional rights.

108.   In addition to or in the alternative, Defendant Connick, acting in his final policymaking authority and under color of law, created and maintained an official policy, practice, and/or custom of failing adequately to train, monitor and supervise the employees of the Orleans Parish District Attorney's Office regarding the constitutional duty to disclose

exculpatory evidence to the defense, despite the obviousness that such training, monitoring, or supervision was required in order to prevent constitutional violations.

109.   The general practice of withholding exculpatory evidence, even if not authorized by officially adopted or promulgated policy, was so common and well-settled as to constitute an official policy that fairly represented the Orleans Parish District Attorney's Office's official custom, policy, and/or practice.

110.   Defendants' actions and the official policy, practice, and/or custom resulted directly in the constitutionally deficient investigation and prosecutions of Plaintiff and abridged his rights guaranteed under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

111.   In this case, the official policy, practice, and/or custom resulted not only in constitutional *Brady* violations, but additionally, the coercion of witness testimony known to be contradicted and allowed to be presented in order to secure a verdict.

112.   The official policy, practice, and/or custom of concealing exculpatory evidence and maliciously prosecuting individuals, without regard to guilt or innocence, proximately and directly caused Plaintiff injury, including great distress, physical pain, anguish, fear, suffering, loss of companionship, and monetary damages.

113.   As a successor in office and liability to District Attorney Connick, current Orleans Parish District Attorney, Leon Cannizzaro, is liable in his official capacity for the damages caused by the failures to disclose exculpatory evidence in violation of Plaintiff's constitutional rights.

## COUNT IV

### *Civil Conspiracy Claim Under 42 U.S.C. § 1985(3) Against Defendants*

114.   All of the foregoing paragraphs are incorporated by reference and realleged as though fully set forth herein.

115.   Defendants acted in concert and with other individuals, and, conspiring amongst themselves and with others, intentionally, maliciously, and with reckless disregard for and deliberate indifference to Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution:

- Withheld exculpatory evidence, and made false arguments to the courts and to juries in order to ensure the conviction, incarceration, and execution of Plaintiff; and

- Imprisoned and continually detained Plaintiff for twenty years, without probable cause or other legal justification, and on the basis of unlawful convictions.

116.   In conducting these acts, Defendants were acting pursuant to official policy.

117.   Defendants' conspiracy amongst themselves and with other unnamed individuals proximately and directly caused Plaintiff injury, including great distress, physical pain, anguish, fear, suffering, loss of companionship, and monetary damages.

118.   As a successor in office and liability to District Attorney Connick, current Orleans Parish District Attorney, Leon Cannizzaro, is liable in his official capacity for the damages caused by Defendant Connick and Defendant OPDA for the conspiracy to deny Plaintiff his constitutional rights.

COUNT V

*Direct Action Pursuant to Louisiana Revised Statute § 22:655*
*Against Defendant ABC Insurance Companies 1-10*

119.    All of the foregoing paragraphs are incorporated by reference and realleged as though fully set forth herein.

120.    Defendant ABC Insurance Companies 1-10, upon information and belief, have issued and currently have in effect one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant ABC Insurance Companies 1-10, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Plaintiff or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay Plaintiff.

121.    By reason of their illegal and unconstitutional acts, Defendants are liable to Plaintiff for all damages and injuries Plaintiff has suffered as a result. Upon information and belief, Defendant ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insured Defendant(s) or are obligated to indemnify the insured Defendant(s) for these sums.

122.    Upon information and belief, Defendant ABC Insurance Companies 1-10 are liable to Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

123.    Pursuant to Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against Defendant ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay Plaintiff on behalf of their insureds or to indemnify their insureds.

21

## DAMAGES

124.   The actions of Defendants, jointly and severally, constituted torts of malicious prosecution and intentional infliction of emotional distress.

125.   The actions of Defendants, jointly and severally, deprived Plaintiff of his constitutional and civil rights guaranteed under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, sections 2, 4, 16, 20, 22, and 24 of the Louisiana State Constitution.

126.   As a direct and proximate cause of Defendants' acts, Plaintiff served twenty years in prison.

127.   Plaintiff suffered a loss of job training, employment, and wages during his twenty-year incarceration.

128.   Plaintiff lost the friendship and companionship of others, including his family.

129.   Plaintiff has suffered mental and psychological stress as a result of being publicly and falsely prosecuted for murder, and as a result of a well-founded fear that he would remain in prison.

130.   As a direct and proximate result of Defendants' acts, Plaintiff suffered damages and injuries for which he is entitled to compensatory damages in an amount to be determined at trial.

131.   Defendants' acts were intentional, malicious, deliberate, reckless, wanton, and/or cruel, such as to justify an award of punitive damages to Plaintiff.

132.   Plaintiff furthermore suffered other injuries as set forth in the other paragraphs of this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jerome Morgan requests the following relief:

A.    An award of compensatory damages to Plaintiff Jerome Morgan and against

Defendants, jointly and severally, in an amount to be determined at trial;

B.    An award of punitive damages to Plaintiff Jerome Morgan and against

Defendants, jointly and severally, in an amount to be determined at trial.

C.    An order for injunctive relief against Defendants and their employees from

retaliating against Plaintiff Jerome Morgan, or those representing him in

this case;

D.    An award of reasonable costs and attorneys' fees pursuant to 42 U.S.C. §

1988 or any other applicable law; and

E.    Any other relief to which Plaintiff is entitled.

### JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury of all issues properly triable to a jury.


Filed and submitted with verification:

Jerome Morgan

Address: 1836 N. Claiborne Ave.
Phone: 504-919-0370
Email: jerome.morgan999@gmail.com   NOLA, 70116

I, Jerome Morgan, personal knowledge of the facts and statements made herein and therefore verify that these facts are true to the best of my knowledge and belief. I have worked with counsel and advisors to comply with the requirements needed to submit this complaint.

Verified on May 26, 2017

_____
Jerome Morgan

23